IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEWIS RICE, B20391, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:12-cv-00847-JPG-PMF ) |
| R. SKIDMORE and R. POLLION, | ) ) ) ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court are defendant Pollion's motion for summary judgment (Doc. 37) and defendant Skidmore's motion for summary judgment (Doc. 42). Plaintiff Rice filed a response (Doc. 47) to Pollion's motion for summary judgment but declined to file a response to Skidmore's motion. For the following reasons, it is RECOMMENDED that both defendants' motions for summary judgment be GRANTED.

Rice is serving a life sentence for murder at Menard Correctional Center ("Menard"). On July 26, 2012 Rice filed a civil rights lawsuit (Doc. 1) pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated by Menard staff. The 28 U.S.C. § 1915A merits review (Doc. 3) held that Rice articulated a colorable Eighth Amendment deliberate indifference to a serious medical condition claim against Skidmore and Pollion. Both defendants now move for summary judgment.

Rice's claim arises out of incidents that occurred at Menard in 2010. At about noon on July 27 of that year Menard staff conducted a "shakedown" of the inmates' cells. A shakedown is a procedure where the prison staff conducts a thorough search of the inmates' cells and

1

belongings for contraband. Rice along with all of the other inmates in the cell block were taken to the prison chapel while their cells were searched. The inmates were lined up directly against and facing a wall. After about 20 to 30 minutes in the chapel, Rice developed a headache and began to experience tightness in his chest. He notified the staff several times that he was not feeling well, and at about 2:00 P.M. Rice passed out.

When Rice awoke he was on a stretcher in the Menard health care unit. Nurse Pollion, Medical Technician Skidmore, Dr. Fahim, and Dr. Nwaobasi were also in the health care unit. Nurse Pollion checked Rice's vital signs and gave him a cup of water along with two pills of Tylenol. Dr. Nwaobasi told Rice that he was being treated for heat exhaustion. The health care unit at Menard is air conditioned, but the chapel and cell houses are not. Rice attempted to tell Pollion, Skidmore, Fahim and Nwaobasi that he did not think he was suffering from heat exhaustion because he was experiencing chest pain. However, the health care unit staff decided to send Rice back to the cell house.

Rice was in his cell for only a few minutes when he again fainted. Rice awoke back in the health care unit and he was treated by Skidmore and Fahim. Skidmore checked his vitals, and then Rice was examined by Fahim. Because his blood pressure was dangerously low, Rice was admitted into the health care unit and he would remain there for the next four days. After the four days in the health care unit, Rice was released back to his cell.

On August 5, 2010 Rice again passed out while waiting in a health care unit holding cell. Rice was in the holding cell waiting to be examined as part of a regular checkup. After he passed out, Rice was admitted into the health care unit and treated by Nurse Natalie Schott. Schott told Rice that she thought his fainting was being caused by medication Rice had been taking, specifically a drug called Prazosin. About a month prior on July 7, Rice was prescribed Prazosin

2

by psychiatrist Dr. Kowalkowski for sleep disruption and nightmares. However the drug is also used to treat high blood pressure and side effects may include weakness, tiredness, and headache.[1] Kowalkowski discontinued the Prazosin subscription on August 4. Rice was kept under observation at the health care unit after the August 5 fainting spell and he was released on August 6. After the August 5 incident Rice had no other fainting spells. Approximately two years after these events occurred, Rice filed this lawsuit. Both defendants filed a motion for summary judgment (Docs. 37 and 42). Rice filed a response (Doc. 48) to defendant Pollion's motion, but did not file a response to Skidmore's motion.

Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Summary judgment should not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The Eight Amendment to the Constitution prohibits the infliction of cruel and unusual punishments on prisoners. U.S. Const. amend. XIII. An inmate's punishment "must not involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925, 49 L. Ed. 2d 859 (1976), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

---

[1] MedlinePlus National Institute of Health, Prazosin, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682245.html (last visited Oct. 23, 2014).

In order to establish that a prison staffer's deliberate indifference to an inmate's medical needs violated the Eighth Amendment, the plaintiff must demonstrate subjective and objective elements of proof. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The objective component is satisfied by an "objectively serious medical condition." The condition must be "sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). The subjective component is satisfied by deliberate indifference and it requires a "sufficiently culpable state of mind." *Arnett*, 658 F.3d at 751. Deliberate indifference is a less demanding standard than purposeful, but it requires more than ordinary medical malpractice negligence. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he ... draws the inference." *Id*. (internal cites omitted). A prisoner who receives some treatment can still establish deliberate indifference, so long as the treatment received is "blatantly inappropriate." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)).

Rice asserts that Pollion's treatment of him after the first fainting episode in the chapel rises to the level of an Eighth Amendment violation. If Pollion's treatment had been more thorough, Rice argues, the second fainting incident in his cell would not have occurred. Because Rice was kept in the health care unit for four days he has a strong argument that his condition was objectively serious. However, Rice's failure to support the subjective component (the "sufficiently culpable state of mind") is fatal to his claim. Rice was brought to the health care unit because he fainted. Prior to passing out, he was standing for an extended period of time in a

stationary position, in an unairconditioned room, in Chester, Illinois, at approximately 2:00 P.M., in late July. Pollion checked Rice's blood pressure, his vitals, and administered water and Tylenol. Immediately after Pollion examined Rice, *Dr. Nwaobasi* told him that he was being treated for heat exhaustion. Rice is arguing that Pollion, a nurse, had the sufficiently culpable state of mind to commit an Eighth Amendment violation of deliberate indifference despite the fact that the diagnosis of heat exhaustion was immediately supported by a medical doctor. Based on the facts leading up the fainting spell and the environment in which it occurred, heat exhaustion was a plausible diagnosis. This diagnosis may have been incorrect, but the Eighth Amendment is not a medical malpractice statute. Rice's argument is simply untenable, and no reasonable jury could find for the plaintiff on his claim against Pollion.

Skidmore also seeks summary judgment. The plaintiff did not file a response to Skidmore's motion for summary judgment. Pursuant to Fed. R. Civ. P. 56, "if a party fails to properly address another party's assertion of fact" the court may "consider the fact undisputed for purposes of the motion." And under Local Rule 7.1, "failure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." Defendant Skidmore also supplemented his motion for summary judgment with a notice (Doc. 45) stating the consequences of failing to respond. The Court thus deems the plaintiff's failure to respond as an admission of the merits of Skidmore's motion for summary judgment. However even if Rice did file a response, Skidmore's involvement in Rice's medical treatment was minimal at best and conducted under the supervision of Dr. Fahim. Thus, Skidmore's treatment, while perhaps not as thorough as Rice would have liked, does not appear to rise to the level of an Eighth Amendment violation.

Finally, because no reasonable jury could find that a constitutional violation occurred by either defendant, the Court will not address the issue of qualified immunity.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the motions for summary judgment filed by defendants Skidmore and Pollion be granted.

SO RECOMMENDED.

DATED: <u>October 23, 2014</u>.

<u>s/Philip M. Frazier</u>
PHILIP M FRAZIER
UNITED STATES MAGISTRATE JUDGE